IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


BRUCE C.,[1]                                          No. 6:17-cv-01814-HZ

            Plaintiff,                         OPINION & ORDER

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.


Katherine Tassinari
Mark Manning
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 - OPINION & ORDER

Portland, OR 97204

Erin Highland
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Bruce C. brings this action for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on April 10, 2013, alleging disability as of March 22, 2013. Tr. 103–04, 108–09.[2] Plaintiff's date last insured ("DLI") is June 30, 2012. Tr. 103–04. His application was denied initially and on reconsideration. Tr. 148–55, 158–63. On January 8, 2016, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 41. At the hearing, Plaintiff asked to withdraw his request for a hearing on the DIB claim. Tr. 19, 44–45. Having found that Plaintiff understood the effects of his withdrawal, the ALJ dismissed the DIB claim. Tr. 19. Addressing only Plaintiff's SSI claim, the ALJ found Plaintiff not disabled in a decision dated July 28, 2016. Tr. 33. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff initially alleged disability based on systolic dysfunction with an ejection fraction estimated at 30%, nonischemic cardiomyopathy, and a dilated left ventricle. Tr. 267. He was 46

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

at the time of his amended alleged onset date and 49 at the time of the administrative hearing. Tr. 79. Plaintiff has a high school education and past relevant work experience as a "Cashier, checker." Tr. 31.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after his application date of April 10, 2013. Tr. 22. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "non-ischemic dilated cardiomyopathy, acute chronic systolic congestive heart with severe systolic left ventricular dysfunction with biventricular heart failure; hypertension; depression; alcohol abuse; and methamphetamine abuse." Tr. 22. The ALJ determined that Plaintiff's impairments met Listing 4.02. Tr. 23. However, the ALJ found that Plaintiff's substance abuse was material and that without it his impairments would not meet or medically equal a listed impairment. Tr. 23–24.

At step four, the ALJ concluded that if Plaintiff stopped using substances, he would have the residual functional capacity to perform sedentary work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:

> [H]e is limited to no climbing of ramps, stairs, ladders, ropes, and scaffolds. He is limited to frequent balancing and occasional stopping, kneeling, crouching, and crawling. The claimant is to have no exposure to hazards such as unprotected heights and moving mechanical parts. He is limited to simple routine tasks consistent with a reasoning level of two, unskilled work as defined by the Dictionary of Occupational Titles (DOT). The claimant is to have only superficial interaction with coworkers and the public, defined as casual and perfunctory.

Tr. 25. Because of these limitations the ALJ concluded that Plaintiff could not perform his past relevant work as a cashier. Tr. 31. But at step five the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as "Electronic Assembler," "Assembler, Small Products I," and "Escort Vehicle Driver." Tr. 31–32. The ALJ again separately found that Plaintiff's substance abuse disorder was a contributing factor to his disability and he would not be disabled if he ceased using substances. Tr. 32–33. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 32–33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not

assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) finding drug and alcohol use material to Plaintiff's disability; (2) failing to include radiculopathy as a severe impairment at step two of the sequential analysis; and (3) failing to meet his burden at step five. Pl. Op. Br. 11, ECF 9. Because the ALJ's failure to include radiculopathy as a severe impairment at step two was harmful, this case is reversed and remanded for further proceedings.

### I. Drug Abuse and Alcoholism

Plaintiff first argues that the ALJ erred in finding that his alcohol and drug use was material to Plaintiff's disability. Under the Social Security Act, "[a]n individual shall not be considered to be disabled for purposes of [social security disability or supplemental security income benefits] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). "The 'key factor . . . in determining whether alcoholism or drug addition is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if she stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998) (quoting 20 C.F.R. § 404.1535(b)(1)).

If an ALJ finds a claimant is disabled, but drug addiction or alcoholism is a contributing fact material to the disabling condition, then the claimant is disqualified from receiving benefits. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). An "ALJ must conduct a drug abuse and alcoholism analysis . . . by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue,* 481 F.3d 742, 747 (9th Cir.2007)

(citing 20 C.F.R. § 404.1535(b)). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Id.* (citing 20 C.F.R. § 404.1535(b)). "[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

The ALJ indicated that Plaintiff's condition met both the A and B criteria of Social Security Listing 4.02 for Chronic Heart Failure because he had an ejection fraction of less than 30 percent and persistent symptoms of heart failure, specifically dyspnea with exertion. Tr. 23; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.02. However, relying on the opinion of reviewing physician Harvey Alpern, M.D., the ALJ found that Plaintiff's polysubstance abuse was material. Tr. 23–24.

Plaintiff contends that the ALJ erred in making these findings. Primarily, Plaintiff argues that the record is ambiguous as to whether Plaintiff's drug and alcohol use is material, and this ambiguity should be resolved in favor of non-materiality and payment of benefits. Pl. Op. Br. 13.

In *Parra v. Astrue*, the Ninth Circuit affirmed the ALJ's finding that drug and alcohol abuse was material to the plaintiff's disability. There, the ALJ indicated that the plaintiff's disabling cirrhosis was alcohol-induced but found that his cirrhosis would have been reversible prior to his date last insured if the plaintiff quit drinking. *Parra*, 481 F.3d at 745. There, the medical expert testified that cirrhosis caused by alcohol abuse is generally reversible. *Id.* at 748. Though the medical expert indicated that he could not definitively know whether the plaintiff's cirrhosis was irreversible because the record was inadequate to support a conclusion either way, he also "explained that he had no reason to believe that [the plaintiff's] condition would not have

improved[.]" *Id.* at 748–49. Ultimately, the circuit court concluded that the ALJ's denial of benefits was supported by substantial evidence. *Id.* at 750. The court reasoned that because the evidence in the record was inconclusive on the issue of materiality the plaintiff had failed to carry his burden in demonstrating that his cirrhosis would have remained if he had stopped drinking. *Id.* at 748–49.

As in *Parra*, the record here does not definitively show that Plaintiff's heart condition would not be disabling if Plaintiff were to cease using drugs or alcohol. However, as the ALJ emphasizes in his decision, the record shows that Plaintiff's condition may have improved in the absence of Plaintiff's substance abuse. First, medical evidence suggests that that Plaintiff's condition was exacerbated by his methamphetamine and alcohol use. During an emergency room visit on August 2, 2013, Plaintiff was told that his use of methamphetamines and alcohol likely caused his heart failure and continued use would inhibit improvement of his condition and shorten his lifespan. Tr. 515. Providers indicated that medications could help heal his heart if he were to stay clean and sober. Tr. 515. In June of 2014, his providers issued an ultimatum that he could not drink alcohol. Tr. 717. Because of his methamphetamine use in August of 2014, Plaintiff's doctor indicated that he may no longer be a candidate for a prophylactic defibrillator. Tr. 747. In 2015, Plaintiff continued to have an ejection fraction below 30% and continued to use alcohol and methamphetamine with no interest in ceasing his drug and alcohol use. Tr. 843, 859. Providers again indicated that his low ejection fraction was "due to" his methamphetamine use. Tr. 859.

Second, Plaintiff's condition began to improve during Plaintiff's brief period of sobriety in 2014. At a follow-up appointment in June of 2014, Plaintiff had ceased drinking alcohol and indicated that he "felt wonderful." Tr. 727–28. His provider indicated that he was approaching

NYHA Class II, an improvement from NYHA Class IV-D where he had been days earlier. *Compare* Tr. 729 (On June 26, 2014, Plaintiff was NYHA Class II) *with* Tr. 715 (On June 23, 2014, Plaintiff was NYHA Class IV, Stage D). A few days later—when Plaintiff's alcohol and drug use was still improved and he had complied with his medication regime—Plaintiff reported feeling well, sleeping through the night, and improvement in his activities of daily living. Tr. 734. Two weeks later, Plaintiff continued to limit his substance use, and his physician reported "significant improvement in his functional class." Tr. 741.

Finally, though part of Dr. Alpern's statement is ambiguous as to whether Plaintiff would still meet the requirements of Listing 4.02 without substance abuse, he also clearly indicates that Plaintiff's substance abuse was material. In a written statement from May of 2016, Dr. Alpern wrote that Plaintiff "would meet 4.02 A,B, whenever he is free of ETOH [and] meth after July of 2015 or later if still has PSA." Tr. 337. But he also indicated in the same statement that Plaintiff's chronic polysubstance abuse results in "material info." Tr. 337. In addition, in an earlier statement from April 5, 2016, Dr. Alpern wrote that Plaintiff's non-ischemic cardiomyopathy was "maybe due to" alcohol use, methamphetamine use, and high blood pressure. Tr. 1058. He also wrote that Plaintiff "meets 4.02 A, B, but PSA material, as of onset date of 3/22/13." Tr. 1059. On April 26, Dr. Alpern again indicated that Plaintiff's polysubstance abuse was material: "Meets 4.02 A,B, [h]owever still <u>on</u> PSA which is material." Tr. 1069. He elaborated that: "Listing met due to low ejection fraction and dyspnea with exertion. It is medically probable that cardiomyopathy would not be present absent PSA, but it is possible that it could be from HBP r/o other cause." Tr. 1071.

Ultimately, Plaintiff bore the burden of proving that his drug and alcohol use was not a contributing factor material to his disability, and he has failed to do so here. *See Parra*, 481 F.3d

at 750. Both Dr. Alpern and Plaintiff's medical records indicate that Plaintiff's polysubstance abuse was material and that his condition may have improved in the absence of polysubstance abuse. Therefore, the ALJ's denial of benefits was supported by substantial evidence and free from error.

## II.     Step Two Finding

Plaintiff also alleges that the ALJ erred in failing to include radiculopathy as a severe impairment at step two of the sequential analysis. At step two, the ALJ determines whether the claimant's medically determinable impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step two is a *de minimis* screening device used to dispose of groundless claims. *Bowen,* 482 U.S. at 153–54. An impairment is severe if it "significantly limits [the claimant's ability] to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely a 'slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting SSR 96-3(p)).

If the ALJ identifies at least one severe impairment, the analysis proceeds, and the ALJ is to take into account all of the claimant's limitations, regardless of whether they are severe or non-severe. *Howard ex. rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923. Therefore, even if the ALJ fails to identify a severe impairment at step two, the error is harmless so long as he considers all the claimant's impairments at subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Graybeal v. Astrue*, No. 3:10–cv–06387–PK, 2011 WL 6019434, at *6 (D. Or. Nov. 2, 2011) ("An ALJ's erroneous finding that an impairment is non-severe constitutes harmless error, however, if the ALJ resolves

step two in the claimant's favor and properly considers limitations imposed by the impairment at other steps of the sequential process.").

At step two, the ALJ noted that the medical record contained complaints of neck pain and difficulty with use of the right upper extremity. Tr. 22. However, he found that "the medical evidence fail[ed] to establish appropriate diagnoses in support of underlying medically determinable impairments." Tr. 22. The ALJ also emphasized that despite Plaintiff's complaints of ongoing neck pain and right upper extremity deficits, "he sought no treatment for related issues and the consultative examinations observed no atrophy of the right upper extremity to suggest he actually limited use of that limb." Tr. 22–23. At step four, the ALJ described the medical opinions from Dr. Andrea Marshall and Dr. J. Wendling regarding Plaintiff's upper extremity restrictions, but he rejected this evidence because "[t]here are no established impairments concerning the upper extremities." Tr. 28, 29 ("For the reasons previously discussed in relation to establishment of severe impairments and Dr. Marshall's opinion, the manipulative limitations [from Dr. Wendling] are not credited."). The ALJ also indicated that he incorporated some limitations related to Plaintiff's right upper extremity by limiting Plaintiff to sedentary work: "Even if the claimant were accepted to have related impairments, a sedentary residual functional capacity so significantly limits lifting and carrying it would [be] reasonable to expect those complaints would be accommodated." Tr. 23.

The ALJ erred in finding Plaintiff did not have a severe impairment related to his neck fracture and radiculopathy in his right upper extremity. At various places in the record, physicians note that Plaintiff has a history of a cervical spine fracture. Tr. 453, 509, 693. At a consultative examination, Dr. Marshall observed that Plaintiff had a weak grip on his right side, dullness to sensation on his right, and a severely restricted range of motion in his neck. Tr. 512.

Plaintiff could only make a weak fist with his right hand and had "extension deformity" of his fingers. Tr. 512. Dr. Marshall indicated that this was likely due to his neck injury. She diagnosed Plaintiff with a history of cervical spine facture with continuing right upper extremity radiculopathy, numbness, and hand weakness. Tr. 513. She limited Plaintiff to lifting and carrying ten pounds and occasionally reaching, handling, fingering, and feeling. Tr. 513. At another consultative examination with Dr. Wendling, Plaintiff reported daily neck pain. Dr. Wendling observed a limited range of motion in Plaintiff's neck and a decreased sensation to touch in his right forearm and some of the fingers on his right hand. Tr. 696–97. He also observed a grip strength of 4+/5. Tr. 697. He diagnosed Plaintiff with neck pain and limited him to doing all manipulative functions frequently and overhead reaching, handling, fingering or feeling occasionally due to Plaintiff's right upper extremity impairment. Tr. 715. Thus, the medical evidence shows that Plaintiff's cervical fracture and radiculopathy caused more than a minimal effect on Plaintiff's ability to work.

The ALJ did not incorporate any of these manipulative limitations in his RFC because he rejected the opinions of Dr. Wendling and Dr. Marshall regarding Plaintiff's neck and right upper extremity. Tr. 28–29. Though Plaintiff does not separately challenge the ALJ's rejection of the examining physician's opinions on this point, the sole reason for the ALJ's rejection of these specific limitations is the ALJ's erroneous step-two finding. *See* tr. 28 (rejecting Dr. Marshall's opinion because "[t]here are no established impairments concerning the upper extremities."), 29 ("For the reasons previously discussed in relation to establishment of severe impairments and Dr. Marshall's opinion, the manipulative limitations [from Dr. Wendling] are not credited."). In addition, the Vocational Expert could not identify any occupations for an individual with Plaintiff's RFC and additional manipulative limitations, including occasional reaching,

occasional bilateral handling, and occasional fingering and feeling. Tr. 75–76. Accordingly, the ALJ's erroneous finding at step two was harmful.

IV.     **Remand for Further Proceedings**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that the application of the ordinary remand rule is the proper course in this case. Though the Vocational Expert testified that Plaintiff would be disabled if he had certain manipulative limitations, there is conflicting evidence as to the extent of Plaintiff's manipulative limitations caused by his radiculopathy. *Compare* tr. 513 (Dr. Marshall limited Plaintiff to occasionally reaching, handling, fingering, and feeling.) *with* tr. 715 (Dr. Wendling limiting Plaintiff to frequent manipulative functions and occasional overhead reaching, handling,

fingering and feeling.). The ALJ—not the district court—must resolve his conflict. Accordingly, this case is reversed and remanded for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

Dated this \_\_\_8\_\_\_ day of \_\_\_Feb\_\_\_, 2019.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge